W. F. HOLDER *et al. v.* JOHN A. CRUMP and WIFE.

HUSBAND AND WIFE. *Creditors of husband cannot sell wife's land for value of improvements.* The creditors of the husband cannot sell the wife's land in order to subject the value of the improvements put upon it by the husband in the form of a residence, unless the wife is clearly shown to have fraudulently participated in the act of the husband, and such a participation is not established by showing that the wife knew that the improvements were being made by the husband with money obtained from other persons, one-half of the money having actually been borrowed by the husband for the purpose.

FROM SUMNER.

Appeal from the Chancery Court at Gallatin. GEO. E. SEAY, Ch.

J. J. TARVER for complainants.

MUNDY & ELKIN for defendants.

COOPER, J., delivered the opinion of the court.

The complainants, as creditors of the defendant, John A. Crump, filed this bill September 16, 1875, to reach for their indemnity the alleged interest of Crump in a lot, the title of which was in his wife. The complainants, Holder and Turner, became bound for Crump as sureties on a bond executed by him as guardian of his sister on December 20, 1871, the liability on final settlement of the guardianship in 1875 being $577.15. The complainants, Allen and Blackmore, became bound for Crump as sureties on a note

for $500, executed May 8, 1872, and on which judgment was afterwards recovered against them. Their liability was reduced by the credit of the purchase money of a one-fourth interest in a tract of land conveyed to them by Crump, and by payments made by Crump to about $100 at the filing of the bill. The lot of land sought to be reached by the bill was conveyed to Alice V. Crump, the wife of John A. Crump, by a third person, on December 30, 1871, by an ordinary deed in fee. The purchase money was $250, one-half of which was paid by the proceeds of the sale of a mare and colt, the separate property of the wife by a deed of gift by a third person dated April 15, 1867, duly proved and registered at the time, which was before her intermarriage with Crump. The other half of the purchase money of the lot was advanced by a brother of Crump's wife, for the benefit of his sister, and with the express agreement that the title should be made to his sister. Afterwards, during the year 1871, improvements were put upon the lot by the husband to the value of about $1,200, of which $1,000 had been paid by the husband before the filing of the bill. The chancellor ordered the lot and improvements to be sold, and the proceeds of sale, after paying to Alice V. Crump the value of the lot alone, to be applied to the satisfaction of the demands of the complainant. Crump and wife appealed.

The bill alleges that the lot was bought by the defendant, John A. Crump, and paid for out of his own means, the title being taken to the wife for the purpose of hindering and delaying his creditors.

21—VOL. 10.

The defendants deny that the lot was paid for by him, and the proof leaves no doubt that the purchase money was paid by and for the wife as above stated. The bill further alleges that the improvements were paid for with the money received by John A. Crump as guardian of his sister, and the complainants, Holder and Turner, seek, by way of subrogation to the rights of the ward, to follow the money into the improvements. The defendant, Crump, in his answer denies that any part of his ward's money was so used. He says that he used the $500 of borrowed money, for the payment of which the complainants, Allen and Blackmore, became bound as his sureties, in making the improvements, and that he paid the other $500 out of the fees of his business as a lawyer. The answer, although sworn to, must be treated as not under oath, the bill waiving the oath, and therefore as only making an issue. The defendants removed to Texas in 1875, before the bill was filed, and neither is examined as a witness. There is no direct testimony to show out of what funds the improvements were paid, but it is almost certain that the payments were made with the money for which the complainants are liable as sureties. The answer says that neither the husband nor wife had the funds with which to pay the purchase money of the lot paid by the wife's brother. And the husband had created several small debts on which judgments, never collected, were recovered against him before or during the erection of the building. The contract for the improvements was made by the husband, for it appears that the mechanic, who performed

the work, sought to subject the lot for the unpaid balance of debt due him under the mechanic's lien given by statute, but acquiesced in a decision against him based on the case of *Knott* v. *Carpenter,* 3 Head, 542. It does not appear that the wife had any thing to do with the contract for the improvements, nor is there any direct testimony tending to show fraud or bad faith on her part in relation thereto. She certainly knew that the improvements were made under a contract with her husband, and probably knew that he could not make them without obtaining the money from others. And the question is whether her land can be sold under these circumstances. The fact that money used by the husband was held by him in a fiduciary character can add nothing to the creditor's equity. For the right of the creditors as against the husband is clear, in any event. The doubt is only as to the right of the wife.

The title of the wife to the lot in question is in fee by an ordinary deed, not to her sole and separate use. A wife can only part with the title to such lands in the mode prescribed by statute, by a joint deed with the husband, and privy examination. If, therefore, the husband put improvements on land so held at his own expense, he cannot claim compensation from her or her heirs, although the work be done with her knowledge and consent: *Marable* v. *Jordan,* 5 Hum., 417. Nor can a mechanic acquire a lien on the land, under the statute in his favor, for work and labor done and materials furnished by contract with the husband alone: *Knott* v. *Carpenter,* 3 Head, 542.

The same is true of land held to the separate use of the wife, even if she see the work in progress and give directions how it shall be done, or cause alterations to be made, unless indeed she join in the contract in the mode prescribed by the instrument under which she holds: *Hughes* v. *Peters*, 1 Cold., 68. In *Ewing* v. *Cantrell*, Meigs, 364, it was held that the creditors of a son could not follow the money of the son used in improving the separate estate of the mother. And in *McFerrin* v. *Carter*, 3 Baxt., 335, the creditors of the husband were refused similar relief where the husband had put valuable improvements on the wife's land. It was said, however, that in a clear case of fraudulent participation on the part of the wife in the investment, the rule might be otherwise, she being secured out of the proceeeds of sale the value of the land without the improvements. And if the land had been voluntarily conveyed by the husband to the wife, and the improvements were largely in excess of the value of the lot, and intended for business purposes, there might be the stronger reason for enforcing the creditor's rights to the extent indicated: *Lockhard* v. *Brodie*, 1 Tenn. Ch., 384.

The chancellor was of opinion, in the case before us, "that under the circumstances, she (the wife), must have assented to, or participated in said investment with a knowlege of the facts," and therefore he granted the relief sought. If, indeed, the wife, with full knowledge of her husband's condition, and that he was proposing to use funds held by him in a fiduciary capacity in the improvement of her land, consented

thereto, it would go far to make her a fraudulent participator in his act.      But, as said by Judge Freeman, in delivering the opinion of the court in *McFerrin* v. *Carter*, "it would have to be a clear case of fraudulent participation on the part of the wife that would call for the application of this principle." All that can in fairness be said in this case is, that the wife knew that the improvements were being made by the husband with means obtained from others.      At least half of the money was borrowed for the purpose, and she is not fixed with knowledge that any part of it was otherwise obtained.      It cannot be said that this is a clear case of fraudulent participation on the part of the wife.

The decree must be reversed, and the bill dismissed as to the wife and lot in controversy with costs, but affirmed in other respects against the husband with costs.